UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 4:24-cr-00489 |
| vs. | ) | |
| | ) | |
| | ) | |
| CHAKRAVERTY ET AL | ) | |

**MOTION TO MODIFY CONDITIONS OF PRETRIAL RELEASE**

COMES NOW DEFENDANT SHIJING CAO, by and through her attorney, Beau B. Brindley, and hereby moves the Court to modify the conditions of her release, which require her to resign from her place of employment. In support, she states as follows:

**Background**

Along with her codefendants, Ms. Shijing Cao has been indicted for conspiracy to commit wire fraud and eleven counts of wire fraud. Until her September 27 arraignment in this case, Ms. Cao had been employed as head of the accounting department at Lux Living, a company owned and operated by her co-defendants, Sidarth Chakraverty and Victor Alston, who are brothers. The charges in the indictment stem from business activities at Lux Living, Big Sur, and other companies affiliated with Ms. Cao's co-defendants in this case. The government has indicated that several employees of Big Sur and Lux Living, including some who directly reported to Ms. Cao, are potential witnesses in this case. The government has not yet fully identified who those witnesses may be.

On September 27, 2024, Ms. Cao appeared before the duty magistrate for her initial appearance, arraignment, and detention hearing. Although the US Attorney's Office had purportedly made no such request, the duty magistrate made it a condition of Ms. Cao's release that "[w]ithin 24 hours, the defendant is required to resign from her current position(s) with

1

LuxLiving, Bug Sur [*sic*], and/or any other organizations/businesses that are owned and/or operated by her co-defendants or in which they are employees." Dkt. 31 at 3. Ms. Cao's objection to this condition was noted on the record. *See* Dkt. 27. At the hearing, the duty magistrate indicated that the condition was necessary because Ms. Cao was the direct supervisor over potential witnesses in the case and her continued employment would require her to have ongoing communication with them, which could be inherently coercive. As a secondary concern, the duty magistrate also indicated that being employed by her co-defendants could be coercive to Ms. Cao.

Ms. Cao objected to this condition on multiple bases, indicating that it created an undue financial hardship and was not narrowly tailored to being the least restrictive means available. Ms. Cao argued that an order requiring her to simply not discuss the facts of the case or any possible testimony with her co-workers would be sufficient under the circumstances, especially in light of the presumption of her innocence. Ms. Cao also pointed out that the same co-workers that she supervised ultimately report to Mr. Chakraverty and Mr. Alston, who were not being required to cease their operation of the company, and thus the concern about inherent coercion based on employment position must not be so compelling that it mandates such a drastic and extraordinary condition of employment resignation.

The duty magistrate noted Ms. Cao's objections and indicated that they could be brought before this Court. Ms. Cao now moves this Court to revisit the conditions of her release and permit her to resume her employment.

## Legal Framework

Pursuant to the Bail Reform Act of 1984, when a person charged with a federal crime appears before the court, the judge or magistrate judge must "order the pretrial release of the

person on personal recognizance, or upon execution of an unsecured appearance bond in an amount specified by the court ... *unless* the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C.A. § 3142(b) (emphasis added). The government bears the burden of proving thst the defendant is a flight risk or poses a risk of harm such that the defendant should not be released or, if he or she is to be released pending trial, the release must be subject to conditions. *United States v. Kisling*, 334 F.3d 734 (8th Cir.2003).

Only "*if* the judicial officer determines that the release [on unsecured or recognizance bond] will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community" should additional conditions be imposed. 18 U.S.C.A. § 3142(c). If the magistrate judge believes that an unsecured or recognizance bond is insufficient, then she "*shall* order the pretrial release of the person … subject to the *least restrictive* further condition, or combination of conditions, that such judicial officer determines will *reasonably assure* the appearance of the person as required and the safety of any other person and the community." 18 U.S.C.A. § 3142(c) (emphasis added).

The conditions of Ms. Cao's release also have constitutional implications.  "The protection against excessive bail has a direct nexus to the presumption of innocence . . . ."  *Hunt v. Roth*, 648 F.2d 1148, 1156 (8th Cir. 1981), *vacated as moot sub nom. Murphy v. Hunt*, 455 U.S. 478, 102 S. Ct. 1181, 71 L. Ed. 2d 353 (1982).  Although pretrial release conditions may serve a legitimate government purpose, the detention or conditions of release imposed cannot be excessive in relation to their purpose. *Bell v. Wolfish*, 441 U.S. 520, 538 (1979); *cf. United States v. Salerno*, 481 U.S. 739, 754 (1987) (explaining that "conditions of release or detention [may] not be 'excessive' in light of the perceived evil.").  "Bail set at a figure higher than an amount reasonably calculated to

3

fulfill this purpose is 'excessive' under the Eighth Amendment." *Stack v. Boyle*, 342 U.S. 1, 5 (1951).  Courts have "no discretion to refuse to reduce excessive bail . . . ."  *Stack*, 342 U.S. at 6.

### Argument

The imposition of a term of release requiring Ms. Cao to resign from her employment was not the least restrictive condition that will reasonably assure her appearance in court and the safety of any other person and the community. There is no reasonable basis on which to conclude that Ms. Cao's continued employment would present a danger to any individual, group of individuals, or to society writ large.[1]

While the order was not clear on this point, it seems the condition was purportedly designed to protect those employees who work under Ms. Cao in the accounting department, whom the government has identified as potential witnesses in this case, from coercion by Ms. Cao that could impact their potential testimony. But there is no basis in the record from which to conclude that any such risk of coercion exists, let alone one that requires the termination of Ms. Cao's employment to "reasonably assure" this purely hypothetical risk will be prevented. Nothing about Ms. Cao's background or personal characteristics suggests she would be engaging in any sort of witness intimidation or manipulation, or that she would fail to comply with a court order directing her not to discuss the facts of the case or the proceedings with her co-workers. Ms. Cao has known that she has been under investigation for the conduct charged in this case for well over a year.  She has been aware of the grand jury investigation and the fact that witnesses were being called.  Hence, during all of this time, she has had the unfettered opportunity to communicate with

---

[1] Although the duty magistrate did not specifically indicate that the condition was necessary to ensure the safety of an individual or the community, it is Ms. Cao's supposition that the condition was not imposed to prevent flight and ensure Ms. Cao's appearance in court.

4

any workers at her job that she chooses.  Yet, there is not a single occasion on which she has ever done anything to impact the potential testimony of these witnesses.  She had the opportunity to do it and did not.  The government cannot dispute this.  That history, in and of itself, illustrates that a term of bond requiring resignation from her employment is draconian and unjustified by the personal history and characteristics of this defendant.  The condition simply is not necessary to protect the public from a risk that history suggests does not exist, and it is certainly not the *least restrictive* means of doing protecting against this risk.

The lack of necessity for this condition was demonstrated by the bond conditions for Ms. Cao's co-defendants. Mr. Chakraverty and Mr. Alston also appeared for their detention hearing before Magistrate Judge Collins on September 27. Both individuals have superior positions in the relevant companies as compared to Ms. Cao. Mr. Chakraverty indeed is the head of the companies. Every employee that reports to Ms. Cao is ultimately a direct subordinate to Mr. Chakraverty. If there is a concern that Ms. Cao's continued employment could be inherently coercive to any potential witness in this case, that concern is no less present with regard to Mr. Chakraverty.

Yet, no condition of a change in employment was imposed on either Mr. Chakraverty or his brother, Mr. Alston. They were each released on a recognizance bond and permitted to maintain their employment in a supervisory position over the very same employees that the duty Magistrate deemed to be their subordinates.  They are not prevented from having a working relationship with these employees.  Yet, Ms. Cao, an employee with no ownership interest, is not permitted to interact with these same employees a professional capacity. Magistrate Judge Collins, of course, was correct not to impose a similar condition of release on Ms. Cao's codefendants—any such condition is patently unnecessary.  If the condition is not necessary to protect the employees from the other two defendants who hold superior positions, then it cannot possibly be necessary to

5

protect them from Ms. Cao.  Singling her out for this condition that devastates her financially while applying no such similar condition to the codefendants is necessarily arbitrary and, hence, unjustifiable.   *See United States v. Motlow*, 10 F.2d 657, 662 (7th Cir. 1926) (Butler, J., riding circuit) ("The proper exercise of judicial discretion is never arbitrary, fanciful, or capricious; it is deliberate and governed by reason and the law applicable to the cases under consideration.").

Moreover, to the extent that any condition is necessary to protect the employees, less restrictive means are available. Following the detention hearing, the undersigned has been able to confirm that Ms. Cao can be transferred to a nonsupervisory position at the defendants' company without significantly impeding the business's operation. Her immediate termination of employment, however, is a hardship not only to her, but to the ongoing cohesion of the business. If the concern is that her supervisory position is inherently coercive, that concern can be addressed and alleviated through these alternate means of her performing her accounting duties without supervising other employees. That is a less restrictive means that is available and sufficient to address whatever concerns may exist, although such concerns are plainly not serious given the relative absence of such financially devastating conditions on the codefendants' respective bonds. Ms. Cao will agree to  the condition that she not supervise any of the potential witnesses, nor have any discussion with them about the facts of the case, the proceedings, or the possibility of testimony. These conditions are sufficient, but not more restrictive than necessary, to protect the potential witnesses from whatever danger Ms. Cao could plausibly present.

It is also worth noting that the stated concerns regarding Ms. Cao's communication with Mr. Chakraverty and Mr. Alston are also unnecessary. Ms. Cao has entered into a joint defense agreement with her co-defendants. The duty magistrate has already indicated that such an agreement should not be burdened by a release condition that would  violate the Sixth Amendment

6

right to prepare a complete defense.  Mr. Chakraverty's conditions of release were altered to permit communications with his brother due to the joint defense agreement. The same alteration and allowance is necessary for Ms. Cao, who must be permitted to communicate with her co-defendants as part of her own defense.  Since the joint defense agreement requires her to be able to talk to her co-defendants about the case explicitly, there is no rational basis on which to conclude that she be compelled to give up her employment  due to her position as a subordinate to the codefendants at the company.

        In light of the availability of less restrictive means to address any potential concerns about an ephemeral danger to co-workers, there is no justification for imposing the extremely onerous and unnecessary condition of forcing Ms. Cao to resign from her employment, particularly given the difficulty Ms. Cao would be certain to face in obtaining new employment under the circumstances. Ms. Cao is a licensed accountant with a professional degree. One of the conditions of her release is that she advise any new or potential employer of the pending charges against her. As a green card holder, Ms. Cao would face an outright insurmountable task in obtaining new employment in her field under these circumstances. Forcing someone in Ms. Cao's position to forego gainful employment while on pretrial release—which is the functional effect of this condition—would serve to undermine rather than promote the purposes of the Bail Reform Act. A defendant who is able to work and make an effective living for their family is far more likely to comply with all of the conditions of their release, attend required court appearances, meet their financial obligations, and be in a position to pay for a meaningful and effective defense than one that is draconianly forced into unemployment by an order such as this. As a condition of release, Ms. Cao was effectively ordered to give up her livelihood.  And deprivation of one's livelihood

7

would be excessive even after conviction.[2]  It fares no better before trial.

Indeed, the condition is incompatible with the Congress's intent in passing the Bail Reform Act.  "Congress has required that the court consider requiring that defendants be gainfully employed during the pretrial period, *see* 18 U.S.C. § 3142(c)(1)(B)(ii), and that during the pretrial period the defendant retains the presumption of innocence, 18 U.S.C. § 3142(j)."  *United States v. Von Matthieu*, No. 4:08CR155DJS, 2008 WL 697402, at *2 (E.D. Mo. Mar. 13, 2008) (Nonce, M.J.).  And Congress prohibited courts from "impos[ing] a financial condition that results in the pretrial detention of the person."  18 U.S.C.A. § 3142(c)(2).  Accordingly, this Court has declined to imposed conditions of release that "likely would result in the defendant's loss of his current employment*." Von Matthieu*, 2008 WL 697402, at *2.  But the condition that Ms. Cao resign from her current employment effectively requires her financial ruin as a condition of release.  She will have no ability to support herself and her family without her current employment.  And Ms. Cao is not eligible for detention, as there is nothing to suggest that she poses a risk of flight or danger to any person or the community.  Requiring Ms. Cao's financial ruin to protect against a speculative and unsupported concern for "inherent coercion" is in direct contravention of congressional intent.

Moreover, the condition requiring Ms. Cao to resign amounts to punishment before trial, and thus violates due process.  The liberty guaranteed by the Fifth Amendment "[w]ithout doubt, . . . denotes not merely freedom from bodily restraint but also the right of the individual to . . .

---

[2] The "Excessive Fines Clause traces its venerable lineage back to . . . Magna Carta [which] required that economic sanctions ' not be so large as to deprive an offender of his livelihood.'" *Timbs v. Indiana*, 586 U.S. 146, 15 (2019) (quoting *Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 271 (1989)).

engage in any of the common occupations of life . . . ." *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923). Yet, Ms. Cao has been ordered to effectively forego her livelihood without any sound rationale for doing so. This requirement is akin to "the prison context, where inmates surrender upon incarceration their rights to pursue a livelihood . . . ." *McKune v. Lile*, 536 U.S. 24, 40 (2002). But, again, Ms. Cao has been convicted of no crime. The condition requiring her to give up her employment constitutes harsh punishment before any adjudication of guilt, and it is thus incompatible with the constitutional guarantee of due process. *Bell*, 441 U.S. at 535 (1979).

Under the circumstances of this case, there is no justifiable reason to maintain the pretrial release condition that Ms. Cao not be permitted to work at her job. Less restrictive means are available. Less restrictive means are appropriate. Less restrictive means must be employed.

WHEREFORE, Defendant Shijing Cao respectfully requests that this Honorable Court modify her conditions of pretrial release to remove the condition requiring her to resign from her employment.

Respectfully submitted,
Shijing Cao

By:    /s/ Beau B. Brindley

LAW OFFICES OF BEAU B. BRINDLEY
53 West Jackson Blvd.
Suite 1410
Chicago, Illinois 60604
312.765.8878
bbbrindley@gmail.com

9

10